DOUCET, Judge.
This appeal arises from a finding by the trial court that the plaintiff-appellant’s preexisting heart condition excluded him from Exquisite’s contractual obligation to pay medical expenses.
Ronald Cayard was first employed as manager of the University of Southwestern Louisiana’s (USL) food services in October 1980, by American Food Management of Marshall, Missouri. American held the *179 contract for USL’s food services for the 1980-81 school year. During 1981, while in the employ of American Food Management, the plaintiff had a massive heart attack. As a result he incurred cardiac infarction, the death of tissue in the heart muscle. The plaintiffs own exhibits indicate that he was diagnosed as having coronary artery disease and hypertensive cardiovascular disease as early as April 1980.
Between August and December 1981, USL ran its own food services. Mr. Ca-yard remained as manager in the employ of the University. Beginning in January 1982, Exquisito Services, Inc., the defendant herein, held the contract for USL’s food services. They, too, hired Mr. Cayard as manager. In March 1982, Mr. Cayard underwent a quadruple by-pass operation because of coronary artery blockage. After paying approximately $13,000 in medical expenses, Exquisito, which is self-insured, discontinued payments on the grounds that the surgery was the result of a pre-existing condition and, as such, was not covered by the contract.
The plaintiff sued Exquisito for breach of contract and damages, seeking to hold them responsible for unpaid medical expenses arising from the surgery.
After a trial on the merits, judgment was rendered in favor of the defendant and dismissing plaintiff’s cause with prejudice, on the grounds that the surgery was in fact the result of a pre-existing condition. Mr. Cayard appeals.
There can be no question that the coronary artery disease pre-dated Mr. Cayard’s employment by Exquisito. The plaintiff’s own exhibit, introduced into evidence at trial, indicates that coronary artery disease was diagnosed as early as April 1980.
Exquisito excluded from its contractual agreement to pay medical expenses, those expenses incurred within the first two years of employment resulting from an illness which arose before employment began.
In spite of this, the plaintiff cites La.R.S. 22:215.6 in support of his argument that Exquisito must pay since they were successors in coverage to his previous employers, American and USL. Alternatively, he argues that they could not discontinue payment after partially paying the claims under the provisions of La.R.S. 22:213(B)(7).
La.R.S. 22:215.6 is inapplicable to the situation currently before the court. It provides, in pertinent part, that:
“A. Upon the replacement of one carrier by another of any group or blanket health and accident insurance policy for ten or more members issued for delivery or delivered in this state, any limitation on benefits otherwise payable because of preexisting conditions clauses, if any, in the succeeding carrier’s plan shall be the lesser of:
(1) The benefits of the new plan determined without application of the preexisting conditions limitation.”
This statute is, we believe, applicable to the situation where an employer changes from one insurance company and plan to another. In this case however, Exquisito did not merely substitute itself for the previous food service, by taking over an existing service but, according to our understanding, contracted independently to take over and run the food services in its own way, although within USL’s specifications with their own employees. They were free to hire anyone they felt qualified and were not required to accept existing employees. Mr. Cayard was required to interview with the new service for the position as manager, just as though he was interviewing for a position unrelated to USL’s food service. Further, Exquisito did not obtain a policy of health insurance for its employees. Rather, as part of the employment contract, Exquisito agreed to pay the medical expenses incurred by the employees with certain restrictions. Under the circumstances, La.R.S. 22:215.6 cannot be applied.
La.R.S. 22:213(B)(7) provides that:
“(7) Cancellation: The insurer may cancel this policy at any time by written notice delivered to the insured, or mailed to his last address as shown by the *180 records of the insurer, and shall refund the pro rata unearned portion of any premium paid. Such cancellation shall be without prejudice to any claim for benefits accrued or expenses incurred for services rendered prior to cancellation. Benefits and expenses incurred shall be as defined and limited by the terms of the policy. The insured may likewise cancel this policy on the above terms. Upon such cancellation, however, the insurer shall not be liable for any claim for benefits accrued, or for expenses incurred for services rendered, subsequent to the cancellation date unless otherwise provided in the policy.”
It, too, is inapplicable to the situation before us.
Exquisito did not cancel a policy of insurance, but discontinued payment after discovering that the expenses resulted from a particular pre-existing condition on the grounds that such conditions were excluded from its contractual agreement to pay medical expenses.
As stated in the statute, the terms of the policy define the accrual of benefits and expenses. Since Exquisito does not provide a policy of insurance, but rather has made a contractual agreement to pay certain medical expenses, this provision does not apply. The plaintiff contends that he made a full disclosure to representatives of Exquisito of his condition at the time of hiring and was assured of coverage under their agreement to pay. As a result, he argues, a contract for payment of medical expenses was entered into at that moment and was acknowledged by the action of Exquisito in beginning to pay the claim at issue here. However, Mr. Raymond Davis, Exquisite’s Vice-President for Operations, and Mr. William Manning, Director of Food Services for Exquisite at USL, both testified that they were not informed of Mr. Cayard’s heart condition until weeks or a month after he was employed by them, when Cayard began having problems performing his job. The trial judge apparently accepted this testimony over that of Mr. Cayard.
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error.
[The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts....]”
Canter v. Koehring, 283 So.2d 716 (La.1973).
Finding no manifest error in the trial judge’s credibility determination, we will not disturb it. Based on that determination, we conclude that no agreement was reached to pay Mr. Cayard for expenses arising from his pre-existing condition. Having concluded that the expenses arising from Mr. Cayard’s by-pass operation were not covered under the contract between Exquisite and Cayard, we need not address the propriety of the trial judge’s decision to exclude certain evidence with regard to damages.
Accordingly, the trial court’s judgment dismissing the plaintiff’s action against Exquisite, is affirmed.
AFFIRMED.